UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KEYANA EDWARDS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:26-cv-00086-JCN |
| | ) | |
| ND PAPER, INC., et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON MOTION TO DISMISS**

Plaintiff, who asserts this action on her own behalf and as guardian for her husband, Damion Hatcher, alleges that Damion was seriously injured when he fell into the opening of a chimney while performing cleaning services at a paper mill. Plaintiff claims that Damion's fall and resulting injuries were the product of negligence by the owner of the paper mill and multiple companies that were contracted to provide services at the paper mill. Defendant New England Mechanical Overlay, Inc. (NEMO) moves to dismiss Plaintiff's claims against it. (Motion, ECF No. 22.) Plaintiff opposes the motion. (Opp'n, ECF No. 53.)

After consideration of the record, the parties' arguments, and the applicable law, the Court denies the motion.

## FACTUAL BACKGROUND[1]

On May 28, 2025, Damion was performing cleaning services during a shutdown at the Nine Dragons paper mill in Rumford, Maine (the Mill), which was owned, operated, and controlled by Defendant ND Paper, Inc. (ND Paper). (Compl. ¶¶ 1, 10.) Damion was employed by Strategic Environmental Response Solutions, LLC (SERS), a company contracted to provide industrial cleaning and environmental services at the Mill. (*Id.* ¶ 23.)

In addition to SERS, several other companies contracted to perform work at the Mill during the shutdown. Defendant Republic Services, Inc. (Republic), an environmental services company, contracted to perform cleaning and maintenance work at the Mill, and to provide personnel and equipment. (*Id.* ¶ 11.) Defendant ACV Environmental Services, Inc. (ACV), an environmental services company, contracted to provide waste management and remediation services at the Mill. (*Id.* ¶ 12.) Defendant Clean Venture, Inc. (Clean Venture), an environmental services company, contracted to provide cleaning services for a chimney at the Mill known as the "Northern Cyclone." (*Id.* ¶ 13.) Defendant Zampell Refractories, Inc. (Zampell), a company that provides industrial construction and maintenance services, contracted to perform scaffolding and other construction work at the Mill. (*Id.* ¶ 14.) Defendant NEMO, a company that provides industrial boiler repair services, contracted to perform boiler maintenance at the Mill. (*Id.* ¶ 15.) Defendant Labor Cleaning Service, Inc. (Labor Cleaning), a company that provides industrial cleaning services, contracted to perform cleaning services at the Mill. (*Id.* ¶ 16.)

---

[1] The following facts are drawn from Plaintiff's second amended complaint (Complaint, ECF No. 76) and are accepted as true as required when assessing the motion to dismiss.

During the shutdown, the Mill was a multi-employer worksite under Occupational Health and Safety Administration (OSHA) policy: on such a worksite, more than one employer may be responsible for hazardous conditions affecting worker safety. (*Id.* ¶ 65.) According to Plaintiff, ND Paper, as the host and controlling employer, had a duty to identify workplace hazards, establish and enforce safety rules, implement and oversee permit systems, coordinate the activities of multiple contractors, and prevent or correct hazardous conditions, including by stopping work when conditions were unsafe. (*Id.* ¶¶ 10, 68.) Plaintiff asserts that Republic, ACV, Clean Venture, Zampell, NEMO, and Labor Cleaning each had independent responsibilities under industry standards to identify safety hazards associated with their activities, protect workers from safety hazards, follow permits and site rules, and stop work, or remove workers from danger when conditions were unsafe. (*Id.* ¶¶ 11-16, 69.) Plaintiff alleges that each Defendant had a duty to exercise reasonable care to provide a safe workplace within the scope of its respective role at the Mill. (*Id.* ¶ 66.)

On May 28, 2025, while working for SERS, Damion was assigned to perform cleaning services on an overnight shift at the Mill. (*Id.* ¶ 24.) That night, a supervisor directed Damion to enter and clean a hazardous permit-required confined space on the ninth floor of the Mill adjacent to the opening of the Northern Cyclone chimney.[2] (*Id.* ¶¶ 17, 19,

[2] Under regulations promulgated by OSHA, a permit-required confined space is a confined space that has one or more of the following characteristics:

25.) Below the opening, the Northern Cyclone chimney has an interior drop of eighty feet straight down to a large industrial boiler. (*Id.* ¶ 18.) In addition to its proximity to the open end of the chimney, the confined space presented other hazards to an occupant, including sloped floors. (*Id.* ¶ 20.) Damion's work in the confined space involved removing accumulated ash and debris from the floor using a shovel and a hose and water to wash the ash and debris down the opening of the chimney. (*Id.* ¶ 26.)

Plaintiff alleges that industry standards and workplace safety regulations require that any worker inside a permit-required confined space be equipped with a retrieval system or mechanical rescue device. (*Id.* ¶ 27.) Damion was allegedly provided with neither. (*Id.* ¶ 28.)

Plaintiff also asserts that industry standards and workplace safety regulations require that a worker in the vicinity of a fall hazard be equipped with appropriate fall protection. (*Id.* ¶ 29.) The only fall protection measure in the confined space consisted of scaffolding poles that served as makeshift guardrails. (*Id.* ¶¶ 22, 29.) According to Plaintiff, the poles, which were installed by Defendants, were not securely anchored and were prone to moving or becoming dislodged; they had rough exposed surfaces that posed risks of cuts and snagging of clothing in an area immediately adjacent to a severe fall

(1) Contains or has a potential to contain a hazardous atmosphere;
(2) Contains a material that has the potential for engulfing an entrant;
(3) Has an internal configuration such that an entrant could be trapped or asphyxiated by inwardly converging walls or by a floor which slopes downward and tapers into a smaller cross-section; or
(4) Contains any other recognized serious safety or health hazard.

29 C.F.R. § 1910.146.

hazard; and the installation did not meet height, surface, and load-bearing standards for a guardrail system designed to protect against falls. (*Id.* ¶ 22.)

Plaintiff further alleges that industry standards and workplace regulations require that a properly trained attendant continuously monitor the safety of a worker inside a permit-required confined space. (*Id.* ¶ 30.) Plaintiff asserts that the attendant assigned to monitor Damion was not properly trained and did not continuously monitor him while he was within the confined space. (*Id.* ¶ 31.)

When Damion completed his assigned task in the confined space, he sought confirmation that the work was done to satisfaction. (*Id.* ¶ 32.) Rather than instructing Damion to exit the confined space, the attendant permitted him to remain inside while a supervisor was summoned. (*Id.*) The attendant observed Damion standing inside the confined space, with his hands on the top scaffolding rail in proximity to the chimney opening. (*Id.* ¶ 33.) The attendant then lost sight of Damion. (*Id.*)

A short time later, a NEMO supervisor looked into the confined space and observed that a scaffolding rail was on the floor. (*Id.* ¶ 34.) The NEMO supervisor asked the attendant whether anyone had been working in the space and informed the attendant that a scaffolding rail was on the floor. (*Id.* ¶¶ 35-36.) The attendant called out for Damion but received no response. (*Id.* ¶ 37.) The attendant then climbed inside the confined space and confirmed that Damion was not there. (*Id.* ¶ 38.)

Plaintiff maintains that an uncoordinated search ensued, without a confined-space rescue plan or retrieval equipment. (*Id.* ¶ 39.) The initial search failed to located Damion, delaying his rescue and emergency medical treatment. (*Id.* ¶ 40.) About thirty minutes

after he was first reported missing, Damion was discovered eighty feet below the confined space, at the base of the Northern Cyclone chimney. (*Id.* ¶ 41.) Damion suffered extensive, permanent, and life-altering injuries in the fall. (*Id.* ¶ 2.)

After Damion's fall, OSHA investigated the circumstances of the accident. (*Id.* ¶ 49.) As a result of its investigation, OSHA issued multiple citations for violations of workplace safety regulations to Defendants ND Paper, ACV, Zampell, and Labor Cleaning. (*Id.* ¶¶ 50-62.) OSHA cited NEMO for violations of 29 C.F.R. § 1904.29(b)(1) and (b)(4) for failing to properly complete OSHA injury logs. (*Id.* ¶ 63.)

Plaintiff alleges that Defendants failed to follow industry standards by neglecting to provide, maintain, or otherwise ensure that appropriate guardrail systems or other fall-protection systems were in place in the confined space where Damion fell. (*Id.* ¶ 70.) Plaintiff maintains that Defendants also failed to properly train workers, attendants, and supervisors on fall protection, and failed to ensure adequate staffing and supervision during an overnight shift involving high-risk work. (*Id.* ¶ 74.) Because Defendants did not adopt appropriate facilities management and employ operational safeguards, Damion had to work in a hazardous location without proper monitoring or fall-protection measures. (*Id.* ¶ 4.) Plaintiff asserts that Damion would not have fallen and suffered injuries if Defendants had complied with accepted industry standards and safety practices. (*Id.* ¶ 5.)

## LEGAL STANDARD

NEMO seeks dismissal of Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At the pleading stage, "a high degree of factual specificity is not required." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 47 (1st Cir. 2012); *see also* Fed. R. Civ. P. 8(a)(2). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." *Grajales*, 682 F.3d at 44-45. As with other assessments that involve an element of reasonableness, determining whether a complaint states a plausible claim is a context-specific task, informed to some degree by common sense. *Iqbal*, 556 U.S. at 679.

[3] NEMO also requested dismissal under Rules 12(b)(2), (4), and (5), asserting that Plaintiff failed to name or serve NEMO correctly, and that the Court consequently lacks personal jurisdiction over NEMO. After NEMO filed the motion, Plaintiff amended her complaint—with the Court's leave and without objection from NEMO—to correct the identification of NEMO. The record establishes that NEMO received adequate notice that it was being sued in this matter, as its registered agent accepted service of the summons and complaint, NEMO filed this motion, and it answered crossclaims by other defendants. Moreover, NEMO has not denied that it was providing boiler maintenance services at the Mill at the time of Damion's fall. Under the circumstances, consistent with the First Circuit's guidance, *see United States v. Davis*, 261 F.3d 1, 33 n.25 (1st Cir. 2001), the Court denies NEMO's dismissal request based on the alleged failure to properly name and serve NEMO. *See also Wash. Trust Advisors, Inc. v. Arnold*, 669 F. Supp. 3d 35, 40 (D. Mass. 2023) (discussing the "misnomer rule" that applies when a plaintiff "has actually sued and served the correct defendant, but mistakenly used the wrong name of the defendant") (quotation marks omitted).

In evaluating NEMO's motion, the Court accepts "as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011). The Court does not, however, credit legal conclusions or recitals of the elements of a cause of action supported only by conclusory statements. *Iqbal*, 556 U.S. 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012) (quotation marks omitted).

## DISCUSSION

The plausibility assessment "operates in conjunction with the substantive law" that gives rise to the claims asserted. *Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012). In the complaint, Plaintiff asserts the following as separate claims against NEMO: negligence; negligent hiring, training, and supervision; loss of consortium; and punitive damages. In this diversity action concerning injuries that occurred in Maine, Maine law supplies the substantive rules of decision. *See Phil. Indem. Ins. Co. v. Employers Ins. Co. of Wausau*, 703 F. Supp. 2d 41, 45 (D. Me. 2010); *Piche v. Nugent*, No. Civ. 05-82-B-K, 2005 WL 2428156, at *2 (D. Me. Sept. 30, 2005).

### A. Negligence Claims

Under Maine law, the elements of a negligence claim consist of "(1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was the cause of the injury." *Bell v. Dawson*, 82 A.3d 827, 831-32 (Me. 2013) (quotation marks omitted). Maine law also recognizes the

tort of negligent supervision. *See Dragomir v. Spring Harbor Hosp.*, 970 A.2d 310, 315 (Me. 2009). Consistent with the Restatement (Second) of Torts §§ 315(b) and 317, such an action may be maintained where there is a "special relationship" between the plaintiff and the defendant such that the defendant has a duty to control the conduct of a third party to prevent that party from causing harm to the plaintiff. *Id.* "The existence of a duty and the scope of that duty are questions of law." *Gniadek v. Camp Sunshine at Sebago Lake*, 11 A.3d 308, 313 (Me. 2011). "Duty refers to whether the defendant is under any obligation for the benefit of the particular plaintiff" under the factual circumstances alleged. *Id.* (quotation marks omitted). Issues concerning the breach of a duty of care are ordinarily questions of fact. *Reid v. Town of Mt. Vernon*, 932 A.2d 539, 544 (Me. 2007).

NEMO contends that the complaint fails to plausibly allege duty, breach, or causation as to NEMO in the absence of specific allegations that NEMO created the hazard, controlled the work, had responsibility for safety measures, or had any other direct involvement in the alleged failure of the guardrail. In support of its argument, NEMO cites *Laurence v. Wall*, No. 08-109 ML, 2011 U.S. Dist. LEXIS 22668 (D.R.I. Feb. 8, 2011), where a plaintiff sued sixty-five defendants, including six defendants who were not specifically mentioned in the complaint, and where the court concluded that the allegations against all "defendants" as a group were insufficient to state claims against the six defendants who were not otherwise mentioned in the complaint. *Id.* at *6-7. NEMO contends that Plaintiff's allegations that all the defendants owed the same duties are "insufficient as a matter of law—particularly in a multi-defendant case—to state a claim against any one defendant." (Motion at 7.) NEMO also argues that the lack of OSHA

workplace safety citations issued to it, when compared to the citations issued to the other defendants, underscores the need for more specificity.

While a plaintiff's failure to distinguish among multiple defendants when alleging the actionable conduct might generate some concerns as to whether one or more defendants have been adequately notified of the basis of their alleged liability, the failure to do so does not necessarily require dismissal. *See, e.g., Rodriguez-Rivera v. Allscripts Healthcare Solutions, Inc.*, 43 F.4th 150, 172 (1st Cir. 2022) (articulating doubts about argument that complaint should be dismissed for failure to specify between two defendants and explaining that "[c]ertain information, such as the structure and responsibility of each distinct entity, may often be unavailable to the plaintiff at this early stage of litigation").

In this case, Plaintiff alleges that each of the contractor defendants, including NEMO, had a duty to exercise reasonable care to provide a safe workplace within the scope of its respective role at the Mill. Plaintiff further alleges that Defendants breached the duty by among other things, failing to install adequate guardrails in the confined space. Plaintiff has directly alleged that NEMO (along with all the other defendants) was responsible for the placement of the makeshift scaffolding poles that were not securely anchored and that served as Damion's only source of fall protection. (Complaint ¶ 22.) Given that a high degree of specificity is not required at the pleading stage, *Grajales*, 682 F.3d at 47, these allegations alone are sufficient to withstand NEMO's challenge. Plaintiff, however, alleges other facts that support her claim against NEMO. For instance, Plaintiff alleges that NEMO was hired to provide boiler repair services at the Mill during the shutdown, which services, one can reasonably infer, included work on the boiler at the base of the Northern

Cyclone around the time that Damion fell. Plaintiff's assertions that Damion was assigned to clean in the confined space adjacent to the Northern Cyclone chimney and that a NEMO supervisor was inspecting the area when the supervisor determined that Damion was missing support a reasonable inference that NEMO had some responsibility for the conditions in the confined space. Furthermore, as explained in more detail in the context of NEMO's challenge to Plaintiff's punitive damages claim, Plaintiff's allegations regarding the defendants' delay in securing emergency services also support a claim against NEMO.

In sum, Plaintiff has alleged sufficient facts to support her negligence claims against NEMO.

**B. Punitive Damages**

"Punitive damages . . . do not constitute a separate cause of action, but instead form a *remedy* available for some tortious or otherwise unlawful acts." *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000). To recover such damages under Maine law, a plaintiff must prevail on the underlying substantive claim and show, by clear and convincing evidence, that the defendant acted with malice. *Tuttle v. Raymond*, 494 A.2d 1353, 1363 (Me. 1985). Negligence alone cannot support an award of punitive damages, and reckless conduct will not justify such an award either. *Id.* at 1360-61. Punitive damages "are available based upon tortious conduct only if the defendant acted with malice." *Id.* at 1361. This requirement is satisfied by a showing of "actual malice," which "exists where the defendant's tortious conduct is motivated by ill will toward the plaintiff." *Id.* The law also recognizes "implied" malice, which exists where "deliberate

conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied." *Id.* The standard of implied malice, however, is not satisfied by a defendant's "mere reckless disregard of the circumstances." *Id.*

NEMO contends that the complaint "falls far short" of the "demanding evidentiary standard" set by *Tuttle*. (Motion at 10.) As with the negligence claims, NEMO asserts that the allegations supporting the punitive damages claim are, for the most part, "group allegations completely unsupported by facts specific to NEMO." (*Id.*) As for the allegations specific to the NEMO supervisor, NEMO describes the conduct of the supervisor as "post-incident observation and reporting" conduct that "cannot plausibly support an inference of malice, let alone meet the clear and convincing standard required under Maine law." (*Id.*)

Plaintiff argues that the standard of proof for punitive damages is not pertinent at the pleading stage, and that she has alleged facts sufficient to support entitlement to punitive damages. She contends, for instance, that her allegations regarding the failure of the defendants, including NEMO through its supervisor, to promptly notify emergency services and conduct a competent search for Damion despite circumstances which suggested that he had apparently fallen eighty feet down the Northern Cyclone chimney, could support an award of punitive damages.

As with the negligence claim, Plaintiff does not distinguish among the defendants when she alleges Defendants' failure to promptly notify emergency services and conduct a competent search for Damion. However, one can reasonably infer from Plaintiff's

allegations that a NEMO supervisor first noticed that Damion was missing and that the defendants, including NEMO, unreasonably delayed in contacting emergency services. Such a delay under the circumstances could reasonably be viewed as sufficiently outrageous to satisfy the standard of implied malice, considering the severity of the injuries that were likely (and actually) sustained. *See Dean v. Scott*, No. CV-04-038, 2005 WL 2716526, at *2 (Me. Super. April 26, 2005) (granting motion to amend to add punitive damages claim where the pleadings alleged company entrusted vehicle to individual knowing he had a serious history of driving infractions, individual then drove vehicle at an excessive speed, hitting plaintiffs' vehicle with considerable force, and individual failed to "leave his own vehicle before rescuers arrived to determine whether the unconscious occupants of vehicle he hit were in need of immediate assistance"). In sum, at this stage, Plaintiff has alleged sufficient facts to support a punitive damage claim.

## CONCLUSION

After consideration of the parties' arguments, for the reasons discussed above, the Court denies NEMO's motion to dismiss.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 16th day of October, 2026.